IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


CHARLES ALDRIDGE, SR.,

     Petitioner,

v.                           CASE NO. 1:13-cv-206-MP-GRJ

SECRETARY, DEP'T
OF CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

     This case is before the Court on ECF No. 1, Petitioner's *pro se* Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petition stems from Petitioner's Alachua County conviction for possession of cocaine and possession of drug paraphernalia, as well as his violation of probation in three other state cases. In his Petition, Petitioner asserts the following grounds for relief: (1) The trial court erred by not allowing Petitioner to withdraw his guilty plea and for not appointing counsel to do so; (2) Petitioner was not afforded the benefit of conflict-free counsel at his motion to withdraw his guilty plea; and (3) Trial counsel was ineffective for advising Petitioner to reject an eighty-month plea offer. (ECF No. 1.)

Respondent filed a response and appendix with relevant portions of the state-court record, arguing that the Petition should be denied based on failure to exhaust, procedural default, and lack of merit. (ECF No. 13.) Petitioner then filed a reply. (ECF No. 15.) Upon due consideration of the Petition, the response, the state-court record, and the reply, the undersigned recommends that the Petition be denied.[1]

## **State-Court Proceedings**

Petitioner was charged in case 01-2011-CF-003385-A with one count of possession of cocaine in violation of Fla. Stat. § 893.13(6)(a), a third degree felony, and two counts of possession of drug paraphernalia in violation of Fla. Stat. § 893.147(1)(b), first degree misdemeanors. (ECF No. 13-1 at 162, 172.)[2] At the time, he was also on probation in three other state cases: (1) 01-2005-CF-3651-A;[3] (2) 01-2005-CF-5399-A;[4] and (3) 01-

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

[2] Because the page numbers throughout the exhibits (ECF Nos. 13-1–5) are inconsistent, the page numbers for the exhibits to which the Court cites refer to the ECF page numbers at the top of the page.

[3] Petitioner was on probation in case number 01-2005-CF-3651-A for: (1) Sale of cocaine in violation of Fla. Stat. § 893.13(1)(a)(1), a second degree felony; and (2) Possession of cocaine in violation of § 893.13(6)(a).

[4] Petitioner was on probation in case number 01-2005-5399-A for: (1) Sale of cocaine in violation of § 893.13(1)(a)(1); (2) Possession of cocaine in violation of § 893.13(6)(a); (3) Trafficking in cocaine in violation of Fla. Stat. § 893.135(1)(b), a first

2010-CF-3054-A.[5] (*Id.* at 282–86, 367, 387; ECF No. 13-2 at 152–60, 174–76, 181.)

On November 15, 2011, Petitioner was sworn and entered a plea of nolo contendere via an open plea agreement to all three counts in his new case—01-2011-CF-003385-A. (*Id.* at 182–86, 302, ln. 23–25, 303, ln. 1–2.) He also entered a plea of admission via a violation of probation/community control petition to violations in all three probation cases as a result of his new felony. (*Id.* at 282–86, 302, ln. 23–25, 303, ln. 1–2.) Defense counsel, Evelyn Sapp, then had Petitioner confirm that there was no plea offer from the State:

> Ms. Sapp: Now, we've talked about this. You do not have a plea offer for the State. Mr. Frisco[6] has said that he would not appeal the Court if the Court were to consider going underneath guidelines because your guideline score sheet is pretty significant.
>
> The Defendant: Yes.

---

degree felony; and (4) Misdemeanor possession of cannabis in violation of Fla. Stat. § 893.13(6)(b), a first degree misdemeanor. On March 30, 2006, Petitioner signed a petition to enter plea of guilty/nolo contendere in his 2005 cases, which noted that he was "advised that the statutory maximum possible sentence for the charge(s) to which I am pleading is 75 years imprisonment and/or a fine of $53,000.00." (ECF No. 13-2 at 152–56.) The offense scoresheet also noted that Petitioner faced a maximum sentence of 75 years' imprisonment for his primary offense of trafficking in cocaine. (*Id.* at 174–76.)

[5] Petitioner was on probation in case number 01-2010-CF-3054-A for possession of oxycodone in violation of § 893.13(6)(a).

[6] Stephen Frisco was the ASA assigned to Petitioner's case.

Ms. Sapp: But we don't have a negotiation. The State isn't promising to make a favorable recommendation for you.

The Defendant: Yes, I understand.

(*Id.* at 303, ln. 3–12.) Ms. Sapp proceeded to question Petitioner about his

open plea agreement to his new offenses:

Ms. Sapp: Now first, starting with the petition to enter the plea of no contest in 2011-3385, do you understand that you are giving up the right to a trial?

The Defendant: Yes, ma'am.

Ms. Sapp: And that will be a trial by jury in that case?

The Defendant: Yes.

Ms. Sapp: And in that case, although I've received the police report as well as the analysis, I have not – I have not taken depositions in that case.

The Defendant: Yes.

Ms. Sapp: We've been sort of focusing on trying to get together mitigation for you –

The Defendant: Yes.

Ms. Sapp: But I have not deposed the witnesses.

The Defendant: Yes, Ma'am.

Ms. Sapp: Are you satisfied with my representation?

The Defendant: Yes, ma'am.

Ms. Sapp: Now in regard to some of thee issues, I didn't have you initial a plea petition, but did we go over this plea petition I have in front of me?

The Defendant: Yes.

Ms. Sapp: It's a five-page petition. What I'm going to ask you to do in terms of paragraph two, if you will initial that paragraph, it basically says that we've talked about witnesses, motions, whether or not DNA could be helpful, and that I have not – I haven't failed to file motions and that kind of thing that you've requested that I do.

The Defendant: Yes, ma'am.[7]

Ms. Sapp: And if you agree with that, if you'll go ahead and initial there. Now otherwise, in regard to the five-page petition, there are initials to the left of about 21 numbered paragraphs. Are those your initials?

The Defendant: Yes.[8]

---

[7] Paragraph two of the plea agreement stated, in part, "Because I wish to accept responsibility at my request and with my agreement, my attorney has not fully investigated my case nor talked to all of the witnesses." (*Id.* at 182–86.)

[8] Petitioner initialed next to paragraph seven, which stated,

If I am presently on probation/early prison release/parole, I understand that by pleading guilty or nolo contendere in this case it may cause revocation of my probation/early prison release/parole and that this could result in a sentence of imprisonment in that case. I further understand that if revoked, any sentence in this case may be consecutive to (in addition to) any sentence in the case in which probation/early prison release/parole is revoked.

(*Id.* at 182–86.) He also initialed next to paragraph eleven, which stated, "I am entering this plea freely, knowingly, intelligently and voluntarily because I believe it to be in my best interest to do so." (*Id.*) In addition, Petitioner initialed next to paragraph number twenty-one, which stated,

I recognize that if I have been told by my attorney that I might receive

Ms. Sapp: The maximum possible penalty is five years imprisonment and/or a $5,000 fine. Now at the time we went over this, you said you were taking Tylenol, Motrin, and you were using an asthma pump. Are you still taking those medications?

The Defendant: Yes, ma'am.

Ms. Sapp: Are there any other medications that you're taking?

The Defendant: No, ma'am.

Ms. Sapp: Do you feel clear-headed and believe you can make an informed decision this morning?

The Defendant: Yes, ma'am.
. . . .
Ms. Sapp: Also I went back and calculated credit for time served as of today because we had planned to do this a couple weeks ago, and as of today, I have your credit down here as 91 days. Do you agree with that – on the new case that you've been in jail –

The Defendant: on the new case?
Ms. Sapp: yeah.

The Defendant: Yes, on the new case.

---

probation or a light sentence, this is merely his/her opinion or estimate and is not binding on the Judge. I further understand that if I am sentenced to incarceration in the county jail or state prison, that I cannot rely upon anyone's, including my attorney's, estimation of how much time I will actually serve as a result of my pea. . . . . Other than the terms of the plea agreement below, if any, no promise or suggestion of any kind has been made to me, directly or indirectly, by my attorney . . . to get me to enter this plea, nor has anyone subjected me to any force, threat, duress, intimidation or pressure to influence me in any way to enter this plea.

(*Id.*)

Ms. Sapp: Okay, then I need you to initial there, and that says you're stipulating that you will not complain or appeal if you're given that credit. Again, this is open to the Court. The Judge could give you up to five years, just on this new case.

The Defendant: Yes.

Ms. Sapp: Do you have any questions for me or the Judge about what it is you['re] doing?

The Defendant: No questions. I was just wanting to talk.

Ms. Sapp: And we'll do that have your fiancé and your mother here to speak to the judge.

The Defendant: yes.

Ms. Sapp: Now what I'm going to ask you to do is to initial there, where it says no negotiation, that you're pleading open to the Court, and sign right here.

(*Id.* at 303–07.)

Next, Ms. Sapp reviewed the violation petition with Petitioner:

Ms. Sapp: Again, I have not, other than reviewing the underlying – the police reports and violation reports, I have not take depositions in the case or done further discovery.

The Defendant: Yeah.

Ms. Sapp: And I have not filed any motions.

The Defendant: Yes.

Ms. Sapp: But we've talked about the case?

The Defendant: Yes, ma'am.

Ms. Sapp: And again, as to paragraph two, if you'll go ahead and if you agree with that and initial there.[9] Now this is also a five-page petition with initials to the left of the numbered paragraphs.

The Defendant: Yes.

Ms. Sapp: Are those your initials?

The Defendant: Yes, ma'am.[10]

---

[9] Paragraph two stated, in part, "Because I wish to accept responsibility, at my request and with my agreement, my attorney has not fully investigated my case nor talked to all of the witnesses." (*Id.* at 282–86.)

[10] Petitioner initialed next to paragraph seven, which stated,

I am presently on probation/community control in other case(s) unconnected to this case(s). I understand that by admitting the violations of probation/community control in this case, it may cause revocation of my probation/community control in the other case(s) and that this could result in a sentence of imprisonment in that case. I further understand that if revoked, any sentence in this case may be consecutive to (in addition to) any sentence in any other case in which I am on probation/community control.

(*Id.*) In addition, Petitioner initialed next to paragraph eleven, stating, "I am entering this plea freely, knowingly, intelligently and voluntarily because I believe it to be in my best interest to do so." (*Id.*) Similarly, he initialed next to paragraph nineteen, containing the following statement:

I recognize that if I have been told by my attorney that I might receive probation or a light sentence, this is merely his/her opinion or estimate and is not binding on the Judge. I further understand that if I am sentenced to incarceration in the county jail or state prison, that I cannot rely upon anyone's, including my attorney's, estimation of how much time I will actually serve as a result of my plea. . . . . Other than the terms of the plea agreement below, if any, no promise or suggestion of any kind has been made to me, directly or indirectly, by my attorney . . . to get me to enter this plea, nor has anyone subjected me to any force, threat, duress, intimidation or pressure to influence me in any way to enter this plea.

(*Id.*)

Ms. Sapp: And basically do those initials indicate that we've gone through this petition?

The Defendant: Yeah.

Ms. Sapp: That you understand what's in it and you agree with what's in it?

The Defendant: Yes.

Ms. Sapp: Do you understand you have a hearing – you're entitled to a hearing before Judge Moseley this afternoon on the violation – or these violation of probation cases?

The Defendant: Yes.

Ms. Sapp: And you're giving up the right to have that hearing?

The Defendant: Yes, Ma'am.

Ms. Sapp: Now I'm going to have you initial here too. And then in number three, and what number three does is it says that you're on probation for sale and possession of cocaine in the 3651 case, sale and possession in the 5399 case. Both of those are 2005, and also trafficking in cocaine in the 5399 case from 2005 and possession of Oxycodone in the 2010-2053 case. That's what you're on probation for.

The Defendant: yeah.

Ms. Sapp: Has anybody promised you anything or threatened you in any way to get you to change your plea?

The Defendant: No.

Ms. Sapp: Are you doing this freely and voluntarily in regard to both of these cases?

The Defendant: Yes.

. . . .

Ms. Sapp: Do you have any questions for me or the Judge in regard to the violation of probation, that you're giving up your right to a hearing, and you've got to throw yourself on the mercy of the Court? I know you got questions about the credit for time served on the 2005 cases, but do you have any other questions? We'll get to – if the Court accepts your admission and your plea, we'll get to the mitigation where you can speak to the Judge.

The Defendant: Yeah.

Ms. Sapp: Okay. This is open to the Court with no negotiation. If you will go ahead and initial here and sign here. And essentially by your signature, you're saying you've read through this with me, you understand what's in it, you're asking the Court to go ahead and rely upon it. Your[] Honor, with those representations, I will submit the pea and the admission to the Court as being freely, knowingly and voluntarily entered.

(*Id.* at 306–10.)

After Ms. Sapp was done reviewing the plea agreements with

Petitioner, Judge Moseley, Ms. Sapp, and Mr. Frisco discussed Petitioner's

two possession of drug paraphernalia misdemeanors:

Mr. Frisco: Your Honor, Steve Frisco for the record. A couple of things. One, I heard Ms. Sapp mention that in the new law violation he would be entering a plea to possession of a controlled substance, but I didn't hear her mention also two counts of drug paraphernalia. They're misdemeanors, but I wanted to make sure that he understood.

Ms. Sapp: You want him to plead to the two misdemeanor – he scores like eight years.

Mr. Frisco: It's not a big deal, but she didn't mention it, so –

Ms. Sapp: The prosecutor is asking, to dispose of the new case, that you plea to the two misdemeanors of paraphernalia, the crack pipe – and what was the other?

Mr. Frisco: Two crack pipes.

Ms. Sapp: Okay. The two crack pipes. One was in your pocket, and the other they said they saw you drop in the car. Are you willing to enter a plea of no contest to those two misdemeanors?

The Defendant: Yes.

Mr. Frisco: Also, your Honor, in 2011-MM-5438, I have that down as a new law violation.

Ms. Sapp: But it's in misdemeanor, isn't it?

Mr. Frisco: It's in misdemeanor, so by entering the admission here, that'll have some [e]ffect on that.

Ms. Sapp: In other words, by enter – well –

Mr. Frisco: It may have some effect. I just want to put it on the record.

Ms. Sapp: Okay. Yeah, it is a new law violation. I don't think that by pleading guilty, which is what you're doing and what we discussed, it may affect you in terms of whether or not I think you testified on there, and it's give you an additional felony conviction, but it's an unrelated offense. It's a different date. So say if you got ten now, you may have 11, if you decide to go to trial on the misdemeanor case and testify in the misdemeanor case.

Mr. Frisco: That's correct, and another thing is by entering the admission in the new law violation, 11-CF-3385,

that will most likely have some effect on his driving privilege. I have to put that on the record, as misdemeanors.

Ms. Sapp: Yes.

The Court: I don't see where you scored the misdemeanors.

Mr. Frisco: He's not entering a plea to those today, your Honor. It's –

The Court: I'm talking about on your –

Mr. Frisco: It should be scored as just part of the probation. I think I might have just put the felony on there.

The Court: I'm talking about the 2011 case, 3385.

Mr. Frisco: It's included –

The Court: Do you have a separate score sheet for that one?

Mr. Frisco: No, sir. I thought it was included on the score sheet I handed out, but I may have missed it.

The Court: You've got a possession of – 305433 –

Mr. Frisco: It got a little confusing because he's on the probation for the three, and then he picked up the two new law violations, one of which is scored and one is not.

The Court: Well, part of the confusion – in fact, I don't even see 3385 on here – is that you're relying on an old score sheet here. Do you have a new score sheet?

Mr. Frisco: No, sir. That's – I just updated that one. I can redo it if you'd like.

The Court: Yeah. I think you need to redo your VOP and then have a separate – you have a new law offense.

Mr. Frisco: Well, I'll include them all on one score sheet then, your Honor, since he is making the admission today and entering a plea.

Ms. Sapp: From looking at them both, he scores more than the statutory maximum on the VOP as bottom of the guidelines.

The Court: I understand. I just want an accurate score sheet and an accurate plea paper. So if he's pleading to the misdemeanors, then we need to add those, and if he – and I want to have an accurate score sheet and an accurate plea paper. So if he's pleading to the misdemeanors, then we need to add those, and if he – and I want to have an accurate score sheet, and, you know, I do know that sometimes that we plea, it comes unexpectedly, and I'm willing to use old plea sheets, but my preference is a new one, if you know it's – redo it and have a clean one, rather than just copying the old one.

Mr. Frisco: Yes, sir.

The Court: And then you can make sure it's accurate because they're not always accurate to start with, but – All right.

(*Id.* at 310–313.)

Judge Moseley then reviewed the factual basis for Petitioner's

offenses and accepted Petitioner's plea agreements:

The Court: . . . . Can I have the factual basis?

Mr. Frisco: Yes, sir. In case 2011-CF-3385, had this case proceeded to trial, the State would have been prepared to prove beyond a reasonable doubt that on or about the 14th of

August 2011 in Alachua County, Florida, the defendant was in possession of a controlled substance, specifically crack cocaine. He was also in possession of two crack pipes used to inhale or ingest crack cocaine. And then as to the VOPs, I believe he violated in 05-CF-3651, 05-CF-5399, and 2010-CF-3054 by pcking up the new law violation which I just mentioned. He also has 2011-MM-5438, which is a misdemeanor case that's going on now, and then he also, I believe, failed to pay court costs as part of the violation.

The Court: All right, and primarily the new law offense?

Mr. Frisco: Yes, sir.

The Court: And did you –

Ms. Sapp: And your Honor, I added the two misdemeanors and had Mr. Aldridge intial the addition and I initialed it, as well.

Mr. Frisco: And I'll update the score sheet now, your Honor.

The Court: All right, and as to the new law offense, did I hear you reference those?

Mr. Frisco: Yes, sir.

The Court: And you acknowledge you were in possession of a controlled substance in the new law offense, Mr. Aldridge?

The Defendant: Is that the one – yes, ma'am – yes, sir.

The Court: All right. The Court accepts the plea as freely and voluntarily entered into. I have reviewed the probable cause affidavits and the violation of probation affidavits as well and do find there's an adequate factual basis for the plea.

The Defendant: Your Honor, can I say something?

The Court: I'm going to hear from you in just a moment. I certainly want to give you an opportunity. I'll be quite frank with you. You've got 19 prior felonies, 24 misdemeanors, you were selling drugs originally. The last – when you actually pled that you were charged with sale or possession with intent to sell, you got a break on that. They let you plea to possession, and I've read the probable cause affidavit. There certainly was ample probable cause to go forward with possession with intent to sell, given the amount that you had, but they didn't do that, and I'm not looking at that. You score what you score. Now you've got within eight months of that charge another new law offense. I'm really having a hard time not understanding why you should not get the maximum penalty that the law allows in this case, which I think is 70 years, given your history. You've been incorrigible, absolutely, in terms of doing the right thing. So I do want to hear from you as to why I shouldn't start at the top end – you've told this Court, and you've told, I know, prior Courts if I went back over and over again, the idea that I'm a changed man doesn't have a lot of – you know, you may want to be a changed man, but you're not changing. Your behavior says otherwise. So what do you want to tell me as to your sentence?

(*Id.* at 313–16.)

Based on Petitioners' current offenses, the offenses for which he was on probation, and his prior record, Petitioner's sentence points totaled 142.6. (*Id.* at 195–96.)  Accordingly, he faced a minimum of 85.95 months' imprisonment, and a maximum sentence of 60 years' imprisonment. (*Id.*)

Petitioner proffered that since 2005, he changed his life. He stated that he has a drug addiction and did not notice the relapse trigger. Petitioner asked Judge Mosely to consider allowing him to go to the

Metamorphosis drug program, into which he was recently accepted. (*Id.* at 316, ln. 11–25, 317, ln. 1–20.) After pleading with Judge Mosely, Petitioner stated, "whatever you give me, Judge Mosely, I just thank God for. I don't care if it is the maximum. I do thank God for it because I know whatever you do right now today is because God gave it to me . . . ." (*Id.* at 318, ln. 13–16.) Petitioner stated, "I don't want you to excuse my behavior, but I want you to help me get some help, and I want you to give me some mercy on it." (*Id.* at 322, ln. 3–5.) Petitioner's mother and Ms. Grimes, Petitioner's fiancé, also addressed the court. (*Id.* at 319, 322–23.) In addition, Ms. Sapp filed a letter in open court to Judge Mosely from Lesia Barton, Petitioner's sister, which discussed Petitioner's thirty-year drug addiction, resulting destructive behavior, and other aspects of Petitioner's life. (*Id.* at 181.)

The State recommended that Petitioner be sentenced "at a very minimum . . . guidelines." (*Id.* at 324, ln. 24–25.) Ms. Sapp, however, explained to Judge Mosely that she discussed with Petitioner the possibility of the Metamorphosis drug program. She stated that she "proposed to [Petitioner] that [they] request that disregarding any credit for any time he has already served, that the Court consider sentencing him to 364 days in the local jail with a condition that he . . . successfully complete

Metamorphosis." (*Id.* at 325, ln. 15–22.) Judge Mosely stated that he was not going to put Petitioner on probation because Petitioner has never completed probation and the Judge doubted that Petitioner could complete probation. (*Id.* at 326, ln. 18–23.) Immediately after Judge Mosely denied putting Petitioner on probation, Petitioner further pleaded with Judge Mosely proffering his attempts to complete probation and his drug addiction, and asked that Judge Moseley let Petitioner go to the drug treatment program. (*Id.* at 327–33.)

Judge Mosely declined Petitioner's request and instead sentenced Petitioner to a total of fifteen years' imprisonment. (*Id.* at 188–91, 287–96.)[11] As the court announced Petitioner's sentence, the following dialogue took place:

> The Court: . . . . This Court is going to sentence you on

---

[11] Petitioner was sentenced to five years' imprisonment with 90 days of jail time credit for count one (possession of cocaine), and 90 days' imprisonment with 90 days jail time credit each for count two and three (possession of drug paraphernalia), both to run concurrently with the sentence for count one. (*Id.* at 188-90.) Petitioner's sentence was to run consecutive to the sentence imposed in 01-2010-CF-3054A, concurrent with the sentence imposed in 01-2005-CF-3651A. (*Id.* at 191.) For the violation of probation in case number 01-2010-CF-3054-A, Petitioner was re-sentenced to five years' imprisonment with credit for 322 days time served, to run concurrent with the sentence imposed in case number 01-2005-CF-3651-A. (*Id.* at 287–89.) For the violation of probation in case number 01-2005-CF-5399-A, Petitioner was re-sentenced to 15 years' imprisonment with credit for 1065 days time served, to run concurrent with the sentence set forth in count one. (*Id.* at 290–93.) And for the violation of probation in case number 01-2005-CF-3651-A, Petitioner was re-sentenced to 15 years' imprisonment with credit for 1065 days time served, to run concurrent with the sentence imposed in case number 01-2005-CF-5399-A. (*Id.* at 294–96.)

the two 2005 cases, 2005 –

Mr. Frisco: It's '05-CF-5399.

The Court: 5399, the trafficking in cocaine case. The Court sentences you to 15 years in –

Defendant: Lord Jesus, I can't do it. Please don't sentence me, please, Judge Mosely, don't sentence me like that. Please, I take back the plea. I don't want to plea. Please.

The Court: – sale of cocaine, concurrent 15 years –

Defendant: Please don't let him sentence me like this. Lord Jesus, please –

The Court: – in 2005-CF-5399 –

(Defendant also speaking throughout the Judge's sentencing.)

The Court: – and 3651 –

Defendant: Please, Jesus, don't let him do this to me please.

The Court: In case number 2000 –

Defendant: Father God, in the name of Jesus –

The Court: – CF-3054 –

Defendant: Lord Jesus I take back – I don't want to plead like this. Judge Mosely, I don't want to plead like this.

The Court: – the controlled substance, five years –

Defendant: I don't want to plead like this. I don't want to plead like this.

The Court: – concurrent with his sentence –

Defendant: I don't want to please like this, Judge. Please don't sentence me, lord Judge. I take back everything. I don't want the sentence like this.

The Court: – as to the 2011 case, five years –

Defendant: Why you doing me like this? Please, you s[e]t me up.

The Court: – consecutive to the previous five years, but concurrent with the 15 years.

Defendant: You s[e]t me up, Ms. Sapp. You said if I would plead open, he would not go over those 80 months, and he did. He did all over it he s[e]t me up. He s[e]t me up. You promised me. You said no (indiscernible.) Oh, Lord Jesus, please, Mr. Mosely, don't sentence me like this. Lord Jesus, help me. God.

The Court: All right. . . . . Just to be clear on the case so that everyone heard the record, 15 years on the trafficking, 15 on the same – on the other 2005 case concurrent. On the two new cases, it was five years, and one concurrent with the previous sentence, and five years consecutive to that five years but concurrent with the 15 years. Can you announce the credit on the cases, Ms. Sapp?

Ms. Sapp: Yes, your Honor. On the 2005 cases, 2005-5399-A and 2005-3651-A, the total amount of credit is 1065 days. In case number 2010-CF-3054-A, the total amount of credit is 322 days, and in case number 2011-CF-3385-A, the total amount is 90 days.

(*Id.* at 333, ln. 20–25, 334, ln. 1–25, 335, ln. 1–25, 336, ln. 1–3.)

After the plea had been accepted and eight days after sentencing, on

November 23, 2011, Petitioner filed a motion to withdraw his plea and

defense counsel's motion to withdraw representation due to a conflict of interest. (*Id.* at 202–03.) In the motion, Petitioner asserted that his admissions to violating probation and his plea of no contest to the new offenses were without benefit of negotiations. (*Id.*) In addition, Petitioner alleged that he was misadvised by defense counsel Evelyn Sapp that any sentence imposed by the court would not exceed the minimum sentence as reflected in the criminal code score sheet. (*Id.*) He claimed Ms. Sapp failed to advise him of the possible consequences of the plea, that his admissions and plea were involuntary, and the he did not understand the consequences of his open plea and admission or the written plea agreement. (*Id.*) Finally, Petitioner alleged that due to his claim of misadvice, a conflict of interest existed between him and Ms. Sapp. (*Id.*)

The Court granted Petitioner's request for appointment of a conflict attorney on January 4, 2012, and appointed Bill Salmon solely to represent Petitioner on his motion to withdraw plea. (*Id.* at 205–06.) Mr. Salmon then filed a motion to strike Petitioner's motion to withdraw his plea without prejudice. (*Id.* at 210–12.) Petitioner, through Mr. Salmon, asserted that he did not sign off or otherwise acquiesce in previous counsel's filing of the motion to withdraw pleas and that although he wished to withdraw his pleas and admissions, the motion did not allege all of the grounds

supporting his motion. (*Id.*) The court granted the motion to strike. (*Id.* at 214.) Petitioner then filed a new *pro se* proposed motion to withdraw his pleas. (*Id.* at 232–64.) In the new motion, Petitioner further argued that Ms. Sapp had a conflict of interest due to her previous position as an assistant state attorney ("ASA") and that she misadvised Petitioner that by entering his open plea he would receive the Metamorphosis drug program. (*Id.*) Mr. Salmon then adopted Petitioner's new motion to withdraw pleas. (*Id.* at 243–45.)

The circuit court held an evidentiary hearing on February 28, 2012, on Petitioner's motion to withdraw his plea and probation violation admissions. After being sworn, Petitioner testified that his November 15, 2011 plea and admissions were not entered into freely, voluntarily, and knowingly. (ECF No. 13-4 at 148, ln. 6–8.) Petitioner said that he did not understand the type of plea he was entering and believed he received misadvice from Ms. Sapp. (*Id.*, ln. 10–15.) Specifically, he said that Ms. Sapp told Petitioner that "in her 20 years knowing Judge Moseley that he's never exceeded the recommended 80 months that was recommended from the state. That [the plea and admissions] would be in [Petitioner's] best interest to get the drug treatment program." (*Id.*, ln. 19–23.) Ms. Sapp also never clearly explained that Petiitoner could get a substantial amount

of time as a result of the open plea. (*Id.* at 149, ln. 3–8.) According to

Petitioner, Ms. Sapp assured Petitioner his sentence would not go above

the recommended 80 months' imprisonment. (*Id.*, ln. 9–12.) Additionally,

Petitioner testified that he had not gone over the entirety of the plea papers

before signing them in court, nor did Ms. Sapp ever read the entire

documents to him. (*Id.*, ln. 25, 150, ln. 1–8.)  After Judge Moseley

sentenced Petitioner, Ms. Sapp met with Petitioner and told him that she

was "totally shocked." (*Id.* at 158, ln. 4.) Petitioner also said that Ms. Sapp

told Petitioner that she would file a motion advising the court that she

misadvised Petitioner on the consequences of the open plea. (*Id.*, ln. 7–9.)

Although Petiitoner was aware of all of the charges he was facing,

including the violations of probation, Petitioner was never told that he could

get more than 80 months by Ms. Sapp, Mr. Frisco, or the court. (*Id.* at 162,

ln. 4–20, 163, ln. 16–22.) Despite receiving scoresheets in his prior plea

agreements, Petitioner said that no one told him that he could be punished

for up to 60 years' imprisonment just for the four offenses alone in his 2010

case. (*Id.* at 165, ln. 6–15.)

　　　Ms. Sapp also testified at the evidentiary hearing. (*Id.* at 168.) After

she was sworn, Ms. Sapp testified that she met with Petitioner on four

separate occasions prior to his sentencing. (*Id.* at 170, ln. 8–11.) Two of

those meetings were specifically to go over the plea papers. (*Id.* at 171, ln. 2–3.) Ms. Sapp testified that she did not tell Petitioner that Judge Moseley never went above the guidelines on the scoresheet; instead, she said that she tells everyone that she "can never guarantee what an outcome is going to be on an open plea." (*Id.*, ln. 18–24.) Ms. Sapp said that she did not make any promises, but predicted that Petitioner would not get anything more favorable than the bottom of the guidelines. (*Id.* at 172, ln. 13–19.) She further stated that although Petitioner wanted residential drug treatment, he never had an opportunity to get it. (*Id.*, ln. 22–24.) According to Ms. Sapp, Petitioner was focused on getting residential drug treatment every time Ms. Sapp met with him. (*Id.* at 173, ln. 2–7.) Despite Petitioner's focus on residential drug treatment, Ms. Sapp stated that she went through each of the violation charges and the new offense charges, and went through the degree and level for each offense. (*Id.*, ln. 15–22.) A scoresheet for his new offense was mailed to Petitioner and Ms. Sapp attempted to show Petitioner the final scoresheet with all of the charges in court on the date of sentencing but Petitioner did not pay close attention to the final scoresheet. (*Id.* at 174, ln. 3–14.) Ms. Sapp stated that she never told Petitioner that his maximum sentence could be somewhere around 70–80 months. (*Id.* at 175, ln. 3–6.) She did, however, specifically read the

paragraph to Petitioner that stated any prediction Ms. Sapp made was just

a prediction, which Petitioner also initialed. (*Id.*, ln. 6–10.) In each case,

Ms. Sapp marked an "X" next to the paragraph after she read it and then at

the conclusion, she asked the client to go back and initial next to each "X".

(*Id.* at 172, ln. 2–8.) She admitted that there was not an "X" next to the

paragraph regarding the maximum possible sentence of imprisonment on

the plea of admissions in the VOP cases. (*Id.* at 178, ln. 8–19.)

Following the April 4, 2012, evidentiary hearing the court issued a

written order denying Petitioner's motion to withdraw his pleas. (ECF No.

13-1 at 268–71.) The trial  court found the testimony of Ms. Sapp to be

credible and the testimony of Petitioner to not be credible. The court

explained that during the plea colloquy, Defendant represented that he and

Ms. Sapp had gone over the plea petitions together, that he had not been

promised anything in exchange for his plea, and that none of the alleged

errors in the plea petition were uncorrected during the plea colloquy.

Further, the Court noted that during the plea the court specifically told

Petitioner he was facing a maximum permissible sentence of 70 years. The

Court found that Petitioner understood he was facing more than a possible

80 months' imprisonment.  And as to Petitioner's claim that Ms. Sapp had

a conflict of interest due to her prior position as an ASA and that she

misadvised him that by entering his open plea he would receive the drug program, the trial court found that no evidence was presented to support those claims. (*Id.*)

On April 25, 2012, Petitioner filed a notice of appeal of the court's order denying his motion to withdraw plea to the First District Court of Appeal ("First DCA"). (*Id.* at 343–46.) In his appellate brief, however, appellate counsel Nancy Daniels only raised the following two issues: (1) Appellant's convictions and sentence must be set aside because the statutes on which Appellant was convicted in Case No. 01-2011-CF-3385 are unconstitutional on their face in violation of the Fourteenth Amendment to the United States Constitution; and (2) The judgments and sentences for the violations of probation should be vacated and set aside because the primary basis for the violation of probation was the new drug law violations in Case No. 01-2011-CF-3385. (ECF No. 13-4 at 195–207.) On August 29, 2012, the First DCA per curiam affirmed Petitioner's conviction and sentence without written opinion, citing *State v. Adkins*, 37 Fla. L. Weekly S449 (Fla. July 12, 2012). (*Id.* at 220.) The mandated followed on September 25, 2012. (*Id.* at 222.)

Next, on October 23, 2012, Petitioner filed a petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate

counsel. (*Id.* at 226–37.) Petitioner argued that Ms. Daniels failed to raise the trial court's denial of the motion to withdraw his plea, the trial court's failure to advise Petitioner of the lowest permissible sentence and the maximum new law violation sentence, and trial counsel's failure to completely fill out the plea paperwork. (*Id.*) The First DCA per curiam denied the petition on the merits on May 22, 2013. (Id. at 372.) Petitioner sought relief in the Florida Supreme Court, but the Court found that it lacked jurisdiction and dismissed the case. (*Id.* at 376.)

In the meantime, on October 25, 2012, Petitioner also filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (*Id.* at 475–89.) Petitioner asserted that Ms. Sapp was ineffective for assuring him that he would receive a certain sentence and that his pleas were not knowingly made and involuntary based on counsel's misadvice. (*Id.*) Further, Petitioner argued that trial counsel failed to advise Petitioner of all pertinent matters involving his open plea, which if he had known, would have led him to accept the state's plea offer of 80 months' imprisonment. (*Id.*) Specifically, Petitioner said Ms. Sapp failed to advise him of the maximum penalties he faced on his violations of probation and also failed to provide him with an updated sentencing scoresheet indicating that he would have started from the lowest

permissible sentence based on his history. (*Id.*) The circuit court denied

Petitioner's motion for post-conviction relief on November 16, 2012. (*Id.* at

543–45.) The circuit court found that Petitioner's claims were procedurally

barred by collateral estoppel because they were raised in a similar form in

his motions to withdraw pleas, denied on the merits by the circuit court,

and affirmed on appeal by the First DCA. (*Id.*)

Petitioner subsequently appealed to the First DCA, which per curiam

affirmed the circuit court's ruling without written opinion on March 11, 2013.

(ECF No. 13-5 at 51.) The mandate followed on April 8, 2013. (*Id.* at 53.)

Petitioner filed the instant petition in this Court on October 10, 2013.

(ECF No. 1.)

## Scope of Federal Habeas Review

The role of a federal habeas court when reviewing a state prisoner's

application pursuant to 28 U.S.C. § 2254 is limited. *Williams v. Taylor*, 529

U.S. 362, 403–04 (2000). Under § 2254(a), federal courts "shall entertain

an application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgement of a State court only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United

States."

Additionally, federal courts must give deference to state court

adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* § 2254(d)(1). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Carrizales v. Wainwright*, 699 F.2d 1053, 1054–55 (11th Cir. 1983).

Moreover, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 120–21 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). A federal writ of habeas corpus is only available in cases of federal constitutional error. *See Jones v. Goodwin,* 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro,* 909 F.2d 451, 452 (11th Cir. 1990). The limitation on federal habeas review applies with equal force when a petition, which truly involves only state law issues, is "couched" in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he

was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

If a defense lawyer pursued course A, it is immaterial that some

other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of

federal law is different from an incorrect application of federal law."

*Harrington*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a strong

case for relief does not mean the state court's contrary conclusion was

unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was

denied on the merits by the state courts, a federal habeas court "must

determine what arguments or theories supported or, [if none were stated],

could have supported, the state court's decision; and then it must ask

whether it is possible fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding in a prior decision

of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree

about whether the state court's denial of the claim was inconsistent with an

earlier Supreme Court decision, federal habeas relief must be denied. *Id*.

Stated the other way, only if "there is no possibility fairminded jurists could

disagree that the state court's decision conflicts with [the Supreme] Court's

precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland*

standard for judging the performance of counsel "is a most deferential

one." *Id.* at 105. When combined with the extra layer of deference that §

2254 provides, the result is double deference and the question becomes

whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## Discussion

### *Ground One: Petitioner's Motion to Withdraw Plea and Admissions.*

Petitioner contends that the trial court erred by denying his motion to withdraw his plea and admissions. He asserts that Ms. Sapp led him to believe he was eligible for a drug treatment program. In doing so, Ms. Sapp allegedly never discussed the minimum or maximum sentences Petitioner faced. Petitioner says he was unaware of the possible maximum sentence until after he tendered his guilty plea and admissions. In addition, Petitioner asserts that he suffered from mental issues and diminished capacity.

To the extent that Petitioner argues the trial court erred in denying his motion to withdraw plea, his argument presents a state law issue for which federal habeas relief is not available. A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." §

2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 7654, 780 (1990)). "Questions of state law rarely raise issues of federal constitutional significance, because 'a state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) (quoting *Carrizales v. Wainwright*, 699 F.2d 1053, 1053–54 (11th Cir. 1983)). Federal habeas relief will only be granted for state law errors if the alleged errors were so critical that they rendered the entire trial fundamentally unfair in violation of the right to due process. *Id.*; *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

Petitioner does not allege in his Petition or reply that the trial court's error violated his federal constitutional rights. Instead, he merely asserts that the trial court should have granted his motion based on counsel's errors. Likewise, although Petitioner filed a motion to withdraw his plea and admissions, his motion was not based on constitutional questions. His

motion to withdraw was, therefore, presented to and ruled on by the state trial court only as a matter of state law. Accordingly, even if this claim were exhausted and not procedurally defaulted, this claim is nonetheless a state law issue for which there is no federal habeas relief.

To the extent, however, that Petitioner's instant claim is construed as one asserting ineffective assistance of trial counsel for failing to discuss the minimum and maximum possible sentences, his claim also fails. At the outset, contrary to Respondent's assertion, Petitioner properly exhausted this claim.

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. § 2254(b)(1), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."). To exhaust state court remedies, the petitioner must fairly present the federal claims to the state court in order to give the State the opportunity to pass upon and correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). Failure to exhaust state remedies may result in the claim being procedurally defaulted. *Sullivan v. Wainwright*, 695 F.2d 1306, 1310 (11th Cir. 1983).

The claim presented in ground one of the Petition is essentially the same claim that Petitioner asserted in his 3.850 motion. Construing the instant claim as a constitutional claim, Petitioner alleges that Ms. Sapp was ineffective for misadvising Petitioner that he would not be sentenced to more than 80 months if he entered an open plea and for failing to advise him of the maximum sentences he faced. Likewise, his 3.850 motion alleged that Ms. Sapp was ineffective under *Strickland* for assuring Petitioner he would receive a certain sentence if he entered an open plea and for not making Petitioner aware of the maximum penalties he faced. (ECF No. 13-4 at 475–94.)  Although the trial court denied the claim on the merits because it found the claim barred by collateral estoppel, Petitioner nonetheless presented it to the state court and therefore, gave the state courts an opportunity to resolve it on the merits. *See Kelley v. Sec'y for Dep't of Corrections*, 377 F.3d 1317, 1343 (11th Cir. 2004) (quoting *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992)) ("To properly exhaust a claim, 'the petitioner must afford the State a full and fair opportunity to address and resolve the claim on the merits.'"). Not only did Petitioner present the same factual argument in his 3.850 motion, Petitioner also presented the argument that the errors constituted ineffective assistance of counsel and violated his constitutional rights in his 3.850 motion. Petitioner

presented his ineffective assistance of counsel claim to the state court such that it was permitted "the opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Picard v. Connor*, 404 U.S. 270, 277 (1971). Although the circuit court found the claim barred by collateral estoppel and, therefore, did not analyze the claim under *Strickland*, Petitioner nonetheless gave the state court an opportunity to consider his constitutional claim.

Petitioner also appealed the circuit court's denial to the First DCA, which per curiam affirmed without written opinion. Under Florida law, the Florida Supreme Court lacks jurisdiction to review per curiam decisions of the state district courts of appeal rendered without written opinion. *Jenkins v. Florida*, 385 So. 2d 1356, 1359 (1980). Because Petitioner was not entitled to seek review by the Florida Supreme Court, he exhausted his available state remedies.

Furthermore, Petitioner was not required to present the issue on direct appeal to properly exhaust this claim as Respondent contends.

> Generally, ineffective assistance of trial counsel will not be cognizable on direct appeal when the issue has not been raised before the trial court. . . . . There are rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue. . . . . Petitioner

asks that we expand this exception by holding, in effect, that
not only may it be raised on direct appeal but that it *must* be
raised on direct appeal, i.e., appellate counsel is ineffective for
failing to do so. We decline to do so. A proper and more
effective remedy is already available for ineffective assistance
of trial counsel under rule 3.850. If the issue is raised on direct
appeal, it will not be cognizable on collateral review. Appellate
counsel cannot be faulted for preserving the more effective
remedy and eschewing the less effective.

*Blanco v. Wainwright*, 507 So. 2d 1377, 1384 (Fla. 1987) (internal citations

omitted) (emphasis in original). While Petitioner presented the same

factual basis in his motion to withdraw plea, he did not frame his motion to

withdraw plea in a constitutional context, nor did the trial court analyze the

motion to withdraw plea from a constitutional context under *Strickland*.

Even though the ineffectiveness of counsel from a constitutional

perspective may have been apparent on the face of the record, it was not

unreasonable for Ms. Daniels not to raise the issue on direct appeal.

Instead, the more appropriate remedy was a 3.850 motion, which, as

discussed, properly exhausted this claim.

       Where a petitioner fairly presents his constitutional claim to the state

court, thereby exhausting his claim, this Court proceeds to consider

whether the state court's adjudication of the claim is "contrary to, or

involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States." *See*

§ 2254(d)(1). "When, however, a claim is properly presented to the state court, but the state court does not adjudicate it on the merits, we review de novo." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (citing *Cone v. Bell,* 556 U.S. 449, 472 (2009)).

In this case, the state court did not address Petitioner's ineffective assistance of counsel claim on the merits. Petitioner's 3.850 motion alleged constitutional violations under *Strickland*. The circuit court, however, declined to analyze Petitioner's claims under *Strickland* and instead, ruled that the claims were barred by collateral estoppel. In doing so, the circuit court  did not analyze Petitioner's claims under *Strickland*. Moreover, as discussed, the claims in Petitioner's motion to withdraw plea were not presented as ineffective assistance of counsel claims. Although the claims were based on the same facts and presented very similar arguments, the standard to withdraw a plea under Fla. R. Crim. P. 3.170(l) is different from the standard for showing ineffective assistance of counsel in violation of the Sixth Amendment.

Where, as here, a motion to withdraw a plea occurs after sentencing, the defendant has the burden of proving that "a manifest injustice has occurred." *LeDuc v. State*, 415 So. 2d 721, 722 (Fla. 1982)). A motion to withdraw plea may be made on the grounds that the plea was involuntary,

such as where the defendant was misadvised about the plea or misled into entering the plea by his attorney. *See Garcia v. State*, 846 So. 2d 660, 661 (Fla. 2d DCA 2003). To prove an ineffective assistance of counsel claim, however, a defendant must demonstrate that his counsel's performance was below an objective and reasonable professional norm, and that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686.

While ineffective assistance of counsel can be a basis for a motion to withdraw plea, the court must still apply the *Strickland* standard:

> [T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson* . . . and *McMann v. Richardson* . . . . The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985).

Based on the record before this Court, when ruling on Petitioner's motion to withdraw plea, the state trial court did not apply the *Strickland* standard. Petitioner's ineffective assistance of counsel claims were, therefore, not addressed during his motion to withdraw plea. There is also

no suggestion that the trial court applied *Strickland* when denying

Petitioner's 3.850 motion. Accordingly, this Court must review Petitioner's

ineffective assistance of counsel claim *de novo*. *See Mason*, 605 F.3d at

1122–23 (reviewing petitioner's Sixth Amendment Confrontation Clause

claim *de novo* because although presented, the state court did not address

the claim).

　　As an initial matter, this Court need not hold an evidentiary hearing

before analyzing this claim *de novo.* Typically, where an applicant has

failed to develop the factual basis of a claim in State court proceedings, the

court shall not hold an evidentiary hearing. *See* § 2254(e)(2). Where an

evidentiary hearing is not barred by § 2254(e)(2), however, it is

nonetheless appropriate for a district court to deny an evidentiary hearing if

such a hearing would not assist in the resolution of the claim. *Breedlove v.

Moore,* 279 F.3d 952, 960 (11th Cir. 2002); *Pugh v. Smith*, 465 F.3d 1295,

1300 (11th Cir. 2006) (noting that an evidentiary hearing may be necessary

where the material facts are in dispute). "Because state court findings of

fact are entitled to a presumption of correctness, . . . a federal court should

conduct a hearing on factual questions only if the state did not conduct 'a

full, fair, and adequate hearing.'" *Brownlee v. Haley*, 306 F.3d 1043, 1067

n.19 (11th Cir. 2002) (quoting § 2254(d)(6)). "The petitioner bears the

burden of establishing the need for an evidentiary hearing in federal court."
*Id.*

Here, Petitioner alleges that Ms. Sapp misled Petitioner into believing
he was eligible for a drug treatment program by failing to discuss the
minimum and maximum sentence he faced. He alleged these same factual
allegations in his motion to withdraw plea, which are the same factual
claims which were raised during the evidentiary hearing. Although the
claim on the motion to withdraw the guilty plea was analyzed from a
different legal perspective, the claim nonetheless involved the same
material facts. A hearing in this Court would essentially duplicate the one
held in state court. Moreover, Petitioner has not requested an evidentiary
hearing, nor has he suggested that the material facts were not adequately
developed in state court. As such, the question becomes whether Ms.
Sapp's performance was below an objective and reasonable professional
norm.

This Court cannot conclude that Ms. Sapp's performance was below
an objective and reasonable professional norm. The trial court expressly
found Ms. Sapp's testimony to be credible and Petitioner's testimony not to
be credible. Specifically, Ms. Sapp testified that she did not tell Petitioner
that Judge Moseley never goes above the guidelines, nor did she make

any other promises about Petitioner's sentence. Instead, she told Petitioner that she could not guarantee the outcome. Ms. Sapp further testified that she told Petitioner he would not get anything *more favorable* than the bottom of the guidelines. The trial court expressly found that Petitioner understood he was facing more than a possible 80 months' imprisonment.

Furthermore, even if Ms. Sapp had suggested that Petitioner might receive an 80 months' sentence of imprisonment if he entered the open plea, an inaccurate prediction about sentencing is generally insufficient to demonstrate deficient performance. *See, e.g.*, *Rivera v. United States*, Nos. 10-22290-Civ-COOKE, 07-20825-Cr-COOKE, 2011 WL 1134982, at *7 (S.D. Fla. Feb. 25, 2011) ("The courts have held that a good faith but erroneous prediction of a sentence by defense counsel does not render a guilty plea involuntary . . . and a defendant's reliance on an attorney's mistaken impression about the length of a sentence does not suffice to render an otherwise voluntary plea involuntary, so long as the court has informed the defendant of the possible maximum sentence that can be imposed.").

Ms. Sapp also reviewed with Petitioner the new offenses as well as the probation violation charges, including the degree and offense levels of each. During the plea colloquy, Petitioner admitted that he understood he

could receive up to five years, just on his new case alone. Ms. Sapp tried

to show Petitioner the final scoresheet with all of his offenses and

applicable sentencing points, including his probation violations, on the day

that he entered his plea. Petitioner, however, chose not to pay attention to

the scoresheet. Even assuming Petitioner was unaware of the maximum

sentence he faced on his probation violations before the day that he

entered his plea, Petitioner's choice to ignore the information and proceed

with his plea does not render Ms. Sapp's performance below an objective

and reasonable professional norm.

Even assuming that Ms. Sapp's performance fell below an objective

and reasonable professional norm, Petitioner still is not entitled to relief

because he has failed to demonstrate that he was prejudiced.  Notably, the

record reflects that before sentencing, the trial court expressly advised

Petitioner that he was facing a maximum permissible sentence of

approximately seventy years.[12] Even though this occurred after Petitioner

entered his plea, under Florida law, Petitioner nonetheless had an

opportunity to withdraw his guilty plea before sentencing. *See Tanzi v.*

*Florida*, 964 So. 2d 106, 113 (Fla. 2007) (quoting Fla. R. Crim. P. 3.170(f))

---

[12] Ultimately, the maximum sentence Petitioner faced was *ten year less* than
what Judge Moseley advised prior to sentencing.

(Under Florida law, a "court may, in its discretion, and shall upon good cause, at any time before a sentence, permit a plea of guilty to be withdrawn."). Thus, even if Ms. Sapp failed to advise Petitioner of the maximum possible sentence he faced as a result of his probation violations, Petitioner was nonetheless informed of the maximum sentence he faced prior to sentencing.

Petitioner also acknowledged on the plea agreement and violation admission petition that he understood revocation of probation could result in a sentence of imprisonment in those cases. Petitioner was expressly advised in his 2005 cases, via a written plea agreement, that he faced up to seventy-five years' imprisonment for his offenses. (ECF No. 13-2 at 152–56, 174–76.)  Accordingly, Petitioner was on notice that he could be sentenced to a term of imprisonment of a maximum of seventy-five years' imprisonment for the offenses he faced.  *See Dallas v. Sec'y, Dep't of Corrections,* No. 5:05-cv-115-Oc-10GRJ, 2008 WL 4279676, at * 3 (M.D. Fla. Sept. 15, 2008) (finding that petitioner was aware the court could impose a 121-month sentence for his probation violation where petitioner responded that he understood he scored in the prison-recommended range, that he had not been promised a particular sentence, and that he was advised in his underlying case that the maximum potential sentence

was thirty years).

In sum, Petitioner has failed to demonstrate that Ms. Sapp's performance was deficient.  And even if her performance was deficient, Petitioner has not shown that, but for Ms. Sapp's errors, he would not have entered his open plea. Petitioner's claim that Ms. Sapp was constitutionally ineffective by not advising him of the minimum and maximum sentences he faced, fails. Petitioner is not entitled to federal habeas relief on ground one.

### Ground Two: Conflict-Free Counsel at the Motion to Withdraw Plea.

Under ground two, Petitioner contends that he did not have the benefit of conflict-free counsel with respect to his motion to withdraw plea. He says that Ms. Sapp failed to advise the court that she previously prosecuted Petitioner and instead, coerced Petitioner into an open plea without discussing the minimum or maximum sentences he faced. He also says he was not represented at the motion to withdraw plea hearing.

To the extent that this claim is construed as a conflict of interest claim grounded in the right to effective assistance of counsel, the claim is unexhausted, procedurally defaulted, and wholly without merit.[13] Petitioner failed to raise his conflict of interest claim in state court. Neither his direct

---

[13] Petitioner's claim that Ms. Sapp failed to advise him of the applicable minimum and maximum sentences has already been discussed and need not be readdressed.

appeal, state habeas petition, nor motion for postconviction relief even mention the issue of conflict-free counsel during his motion to withdraw plea. Likewise, none of his state court filings assert that he was denied effective assistance of counsel during his motion to withdraw plea. This claim is, therefore, unexhausted.

In addition, Petitioner cannot now bring this claim in another state habeas petition. Pursuant to Fla. R. App. P. 9.141(c)(5)(C), "[t]he court may dismiss a second or successive petition if it does not allege new grounds and the prior determination was on the merits, or if a failure to assert the grounds was an abuse of procedure." Further, "[s]uccessive habeas corpus petitions seeking the same relief are not permitted nor can new claims be raised in a second petition when the circumstances upon which they are based where known or should have been known at the time the prior petition was filed." *Johnson v. Singletary*, 647 So. 2d 106, 109 (Fla. 1994). Considering Petitioner filed a state habeas petitions and the circumstances regarding Ms. Sapp were known or should have been known at the time the prior petitions were filed, Petitioner would be procedurally barred from filing another state habeas petition asserting this argument.

Similarly, Petitioner cannot assert this claim in another motion for

postconviction relief under Rule 3.850. A motion under Rule 3.850 must be made within two years after the judgment and sentence become final. Fla. R. Crim. P. 3.850(b). In this case, Petitioner's judgment and sentence became final on September 25, 2012. Any motion for postconviction relief would, therefore, be barred at this point.[14] Accordingly, because Petitioner cannot now assert his claim regarding conflict-free counsel in state court, his claim is procedurally defaulted.[15]

Nonetheless, "[a] procedurally defaulted claim can support federal habeas relief in only two narrow situations. First the petitioner may demonstrate cause and prejudice." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him . . . ." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

---

[14] Although several exceptions to the two-year limit exist, none would apply in this case. Specifically, his claim is not based on facts that were previously unknown to him, the right to effective assistance of counsel is not a newly established right, and not only did he previously file a 3.850 motion, nothing suggests that he retained counsel to file a second 3.850 motion, who ultimately failed to timely file the motion. *See* Fla. R. Crim. P. 3.850(b).

[15] Although Respondent does not specifically set forth an argument regarding procedural default, Respondent states that she "asserts all procedural defenses and bars available to it." (ECF No. 13 at 1.) Thus, because Respondent asserts all procedural bars, the Court may consider whether procedural default applies in this case. *See Esslinger v. Davis*, 44 F.3d 1515, 1527–28 (11th Cir. 1995) (when the state waives a habeas petitioner's procedural default in failing to obtain appellate review of a claim, the district court should assume the waiver is justified and not *sua sponte* invoke the procedural default to bar relief).

Some examples of "cause" include a showing that the factual or legal basis

for a claim was not reasonably available to counsel, and that some

interference by officials made compliance impracticable. *Id.* Attorney error

that constitutes ineffective assistance of counsel in violation of the Sixth

Amendment can render "cause." *Martinez v. Ryan*, 132 S. Ct. 1309, 1315

(2012); *Murray v. Carrier*, 477 U.S. 478, 487 (1986). But, an ineffective

assistance of counsel claim must generally be presented to the state

courts as an independent claim before it can be used to establish cause for

a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000)

(citing *Murray*, 477 U.S. at 489). In such case, unless the prisoner can

satisfy the cause and prejudice standard for the procedurally defaulted

ineffective assistance of counsel claim, the ineffective assistance of

counsel claim cannot serve as cause for the default. *Id.*  To show

prejudice, the petitioner must show that there is at least a reasonable

probability that the result of the proceeding would have been different had

the constitutional violation not occurred. *Henderson v. Campbell*, 353 F.3d

880, 892 (11th Cir. 2003).

Second, the petitioner may show that enforcing the procedural

default would result in a fundamental miscarriage of justice. *Mize v. Hall*,

532 F.3d at 1190. To show a fundamental miscarriage of justice, the

petitioner must show that in light of new evidence, no reasonable juror would have convicted him. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner cannot show cause or prejudice for his default, nor can he show that enforcing the procedural default would result in a fundamental miscarriage of justice. Although Petitioner says he did not have the benefit of conflict-free counsel for his motion to withdraw plea, the trial court specifically granted Petitioner's request for appointment of a conflict attorney and appointed Mr. Salmon to represent Petitioner on his motion to withdraw plea. In addition, the trial court struck the motion to withdraw plea filed by Ms. Sapp and permitted Petitioner to file a new motion to withdraw plea, which Mr. Salmon adopted. Moreover, Mr. Salmon—not Ms. Sapp—represented Petitioner at the evidentiary hearing on the motion to withdraw plea. Therefore, Petitioner cannot show cause and prejudice for failing to raise a claim. And because Petitioner's argument does not involve the presentation or consideration of any new evidence, he also cannot show a fundamental miscarriage of justice. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1936 (2013); *Mize*, 532 at 1190.

Even if Petitioner had intended to pursue a conflict of interest claim involving Mr. Salmon, Petitioner still cannot show cause for the default.

Although appellate counsel did not assert this issue on appeal, Petitioner nonetheless could have raised the issue in his postconviction motion along with his other ineffective assistance of counsel claims. *See Suzarez v. Dugger*, 527 So. 2d 190, 193 (Fla. 1988) (noting that appellate counsel cannot be faulted for not raising a claim of ineffective assistance of trial counsel on direct appeal and instead preserving the claim so it may be asserted through the more effective 3.850 postconviction remedy). Petitioner, however, did not assert in his 3.850 motion that Mr. Salmon had a conflict of interest while he represented Petitioner on his motion to withdraw plea.

In addition, although Petitioner claims he did not have adequate counsel to advance his claims, he was not entitled to counsel in his collateral proceedings. The law is well-settled that there is no constitutional right to assistance of counsel in collateral proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ; *Kokal v. State*, 901 So. 2d 766, 777 (Fla. 2005). Accordingly, Petitioner cannot rely on a lack of representation on his 3.850 motion to excuse his default.

Even if Petitioner could overcome the procedural default through *Martinez*, however, his conflict of interest claim has no merit. "[I]n order to establish an ineffectiveness claim premised on an alleged conflict of

interest the defendant must 'establish that an actual conflict of interest adversely affected his lawyer's performance.'" *Hunter v. State*, 817 So. 2d 786, 791–92 (Fla. 2002) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). "A lawyer suffers from an actual conflict of interest when he or she 'actively represents conflicting interests.'" *Id.* at 792 (quoting *Cuyler*, 446 U.S. at 350); *cf. Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987) (citing *Cuyler*, 446 U.S. at 350; *Stevenson v. Newsome*, 774 F.2d 1558, 1561 (11th Cir. 1985)) (a mere possibility of a conflict of interest does not rise to the level of a constitutional violation). "If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists." *Zuck v. Alabama*, 588 F.2d 436, 439 (5th Cir. 1979).

There is no evidence in the record even suggesting that Mr. Salmon owed duties to a party whose interests were adverse to Petitioner. Further, Petitioner has failed to allege how Mr. Salmon had a conflict of interest during the motion to withdraw plea. Thus, Petitioner has failed to demonstrate that Mr. Salmon had an actual conflict of interest. Mr. Salmon cannot be deemed to have rendered constitutionally ineffective assistance during the motion to withdraw plea.

To the extent that Petitioner's claim is construed as asserting a

conflict involving Ms. Sapp during the plea stage, Petitioner's claim is also unexhausted, procedurally defaulted, and without merit. Although Petitioner asserted this claim in his motion to withdraw plea, he did not assert this claim on appeal or in any postconviction motions. *See Castille v. Peoples,* 489 U.S. 346, 351 (1989) (explaining that to exhaust state remedies, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or collateral review). While the trial court considered his claim, this does not constitute proper exhaustion for habeas purposes.

This claim is also procedurally defaulted because Petitioner cannot now assert the claim in state court. Petitioner already sought appellate review and subsequently filed a motion for postconviction relief and a state habeas petition. Petitioner's claim does not involve any newly discovered evidence. Instead, the fact that Ms. Sapp previously prosecuted Petitioner was both public information and known to Petitioner at the time that he filed his motion for postconviction relief and his state habeas petition. *See Porter v. State*, 653 So. 2d 374, 379 (Fla. 1995) (petitioner's claim in third 3.850 motion that resentencing counsel had a conflict of interest because he previously prosecuted petitioner, was untimely and procedurally defaulted because prosecution was a matter of public record open to public

inspection and therefore, did not qualify as newly discovered evidence).

Moreover, Petitioner cannot show cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default. Although Petitioner alleged in his state habeas petition that Ms. Daniels was ineffective for not raising certain issues on appeal, Ms. Sapp's alleged conflict-of-interest based upon Ms. Sapp's previous prosecution of Petitioner while Ms. Sapp was an ASA, was not one of the issues that Petitioner claimed Ms. Daniels failed to raise. Petitioner, therefore, cannot use the alleged ineffectiveness by Ms. Daniels as cause to excuse his procedural default here.

Moreover, Petitioner could have asserted this claim in his 3.850 motion, along with his other ineffective assistance of counsel claims. Nothing suggests that Petitioner's failure to raise the issue of Ms. Sapp's alleged conflict in his postconviction motion or state habeas petition was attributable to anyone other than Petitioner. *See Coleman*, 501 U.S. at 753 ("cause" must be something external to the petition that cannot fairly be attributed to him). Indeed, Petitioner was aware of the issue at the time considering he presented it to the trial court in his motion to withdraw plea. And to the extent Petitioner claims he did not have adequate counsel to advance his claims, he was not entitled to counsel in his collateral

proceedings. Petitioner cannot show cause for his default and the Court need not proceed to the issue of prejudice. *See Ward v. Hall*, 592 F.3d 1144 (11th Cir. 2010) ("It is well established that if the petitioner fails to show cause, we need not proceed to the issue of prejudice.").

Even if Petitioner had exhausted his conflict of interest claim regarding Ms. Sapp and her previous employment as an ASA, and even if the claim was not procedurally defaulted, his claim is without merit. The mere fact that Ms. Sapp previously prosecuted Petitioner while she was an ASA does not constitute ineffective assistance of counsel. Nothing suggests that Ms. Sapp was actively representing conflicting interests—she was not then employed as an ASA, nor was she the original prosecutor in any of the three violation of probation cases. *See Graffia v. United States*, 264 F. Supp. 2d 674, 679 (N.D. Ill. 2003) (defense counsel's former employment as an Assistant United States Attorney did not demonstrate an actual conflict of interest because he was not actively representing incompatible interests; his former position creates nothing more than a mere theoretical division of loyalties); *Hendricks v. State*, 331 Mont. 47, 51–52 (Mont. 2006) (despite appellant's speculative allegations that defense counsel harbored resentment against him or that his representation as influenced by defense counsel's having previously

prosecuted appellant, nothing in the record demonstrated that an actual conflict existed to constitute ineffective assistance of counsel); *see also* R. Reg. Fla. Bar 4-1.11.[16] Ms. Sapp was not required to inform the trial court that she previously prosecuted Petitioner because this did not automatically create a conflict of interest. Although at one point in time she was advocating against Petitioner, in this case, she was advocating for Petitioner in an entirely new case. Any perceived conflict of interest is nothing more than speculative and therefore does not constitute ineffective assistance of counsel. Petitioner's conflict of interest claim with respect to Ms. Sapp fails on the merits.

Petitioner's claim that he was denied the right to conflict-free counsel at his motion to withdraw his plea is unexhausted, procedurally defaulted, and without merit. Furthermore, to the extent the claim is construed as asserting that he was denied the right to conflict-free counsel during his

---

[16] Rule 1-1.11 states, "[a] lawyer who has formerly served as a public officer or employee of the government: (1) is subject to rule 4-1.9(b) and (c); and (2) shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing to the representation." Rule 4-1.9 provides that "[a] lawyer who has formerly represented a client in a matter must not afterwards: . . .  (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or (c) reveal information relating to the representation except as these rules would permit or require with respect to a client."

plea, his claim is also unexhausted, procedurally defaulted, and without merit. Ground two, therefore, does not warrant federal habeas relief.

### Ground Three: Trial Counsel's Advice to Reject an 80-Month Plea Offer.

In ground three, Petitioner contends that Ms. Sapp was ineffective for advising Petitioner to reject an eighty-month plea offer. In addition, he says Ms. Sapp did not take any depositions, did not conduct any discovery, and failed to present any mitigation evidence to the court.

Petitioner's claim that Ms. Sapp was ineffective because she failed to take depositions, conduct discovery, and present mitigation to the court is unexhausted, procedurally defaulted, and without merit. Petitioner did not present this claim at any stage in his state court proceedings. This issue is, therefore, unexhausted. Additionally, because the failure to previously present these claims in state court cannot fairly be attributed to something external to him, and because Petitioner was aware of these issues at the time he filed his original state pleadings, this claim is also procedurally defaulted.

Even if his claim regarding discovery and mitigation were not procedurally defaulted, his claim is meritless because it is directly contradicted by the record. Ms. Sapp's performance was not deficient

because Ms. Sapp presented significant mitigation during Petitioner's change of plea. For example, she presented Petitioner's mother and Ms. Grimes, both of whom provided an in-court statement regarding Petitioner's sentence. Ms. Sapp also filed the letter from Petitioner's sister's in court on the day of sentencing. Ms. Sapp further argued that due to Petitioner's drug addiction, Petitioner should receive a 364-day jail sentence and residential drug treatment. The allegations that Ms. Sapp failed to conduct any discovery and failed to present any mitigation about his drug dependency issues are therefore contradicted by the record.

Furthermore, Petitioner spoke at length prior to sentencing about his drug dependency issues, the fact that he was a "changed man," and about being accepted into the residential drug treatment. Even if Ms. Sapp had not presented specific mitigation evidence to the court, Petitioner surely had the opportunity to do so himself. And, to the extent Petitioner argues Ms. Sapp did not take any depositions, Petitioner acknowledged such during his change of plea and agreed that it was because Ms. Sapp was focused on trying to get together mitigation. Further, immediately after acknowledging such, Petitioner stated that he was satisfied with Ms. Sapp's representation. Petitioner's plea negated any further need to engage in discovery.

Petitioner cannot demonstrate that Ms. Sapp's performance was deficient. Without deficient performance, it is axiomatic that Petitioner could not have been prejudiced by the deficient performance. Accordingly, even if Petitioner's ineffective assistance of counsel claim with respect to discovery and mitigation was not procedurally defaulted, there is no merit to the claim.

Finally, Petitioner's claim that Ms. Sapp was ineffective for advising him to reject an 80-month plea offer has no merit. As an initial matter, Respondent appears to concede,[17]  and the Court agrees, that Petitioner has exhausted this claim.[18] Accordingly, the Court must consider whether there is merit to Petitioner's claim.

"[C]laims of ineffective assistance of counsel in the plea bargain

---

[17] Respondent asserts in her brief, "Petitioner also titles his claim that counsel was ineffective for failing to advise him to accept an 80-month plea offer. This claim, which is not supported by the facts below it, is insufficiently pled. However, the claim is devoid of merit." (ECF No. 13 at 41.)

[18] Ground two of Petitioner's 3.850 motion stated, "[d]efense counsel failed to fully advise the Defendant of all the pertinent matters involving which plea to enter rending his open plea involuntary, where if fully advised he would have accepted the state's plea offer." (ECF No. 13-4 at 485.) Petitioner asserted that but for Ms. Sapp's errors, he "would have accepted the state's offer of 80-months Department of Corrections rather than enter an unprotected 'open plea' which resulted in a far greater sentence of 15-years." (*Id.* at 487.) The circuit court denied this claim on the basis of collateral estoppel and the First DCA *per curiam* affirmed. (*Id.* at 543–45; ECF No. 13-5 at 51–53.) As discussed with respect to ground one of the Petition, Petitioner presented this claim to the state court so the state court could have a full and fair opportunity to resolve the claim on the merits. Petitioner was not entitled to seek review in the Florida Supreme Court, so he has properly exhausted the claim.

context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).

As discussed in ground one, the state courts did not apply *Strickland* to Petitioner's ineffective assistance of trial counsel claim. This Court must, therefore, review the claim *de novo*.[19]

Petitioner has not shown a deficiency in Ms. Sapp's performance with respect to a plea offer from the state. In the context of a plea bargain, under the performance prong, "defense counsel has the duty to communicate formal offers from the prosecutor to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 132 S. Ct. at 1408. The fundamental problem with Petitioner's claim, however, is that based on Petitioner's own allegations, Ms. Sapp conveyed plea offers to Petitioner. Specifically, Petitioner alleges that "[d]uring pre-trial negotiations with the state, the state had tendered offers which Defendant rejected because counsel assured him he could do better." (ECF No. 2 at 7.) It is axiomatic that Ms. Sapp could not have rendered deficient performance for failing to convey plea offers when she allegedly conveyed plea offers.

---

[19] An evidentiary hearing is not necessary to resolve this claim for the same reasons as discussed under ground one.

Even if Ms. Sapp's performance was somehow deficient, Petitioner has not demonstrated that he suffered prejudice as a result. To show prejudice in the context of a plea bargain, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).  Where the prejudice alleged is the choice to reject a plea offer,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385; *Frank v. United States*, 522 F. App'x 779, 781 (11th Cir. 2013).

Contrary to Petitioner's allegation, the evidence does not suggest that he would have accepted a plea offer. The circuit court found Ms. Sapp's testimony to be credible that she told Petitioner that he would not get anything more favorable than the bottom of the guidelines.[20] The circuit court also found that Petitioner understood he was facing more than a possible 80 months' imprisonment. Even though Petitioner entered an

---

[20] The trial court's factual findings are entitled to a presumption of correctness. *See Brownlee*, 306 F.3d at 1067 n.19.

open plea, Mr. Frisco recommended Petitioner be sentenced to—at a minimum—guidelines, which was 85 months' imprisonment. Yet, Petitioner chose to enter an open plea because doing so would be the only way he might get sentenced to the drug treatment program. Petitioner ignored the final sentencing scoresheet that noted the possible maximum term of imprisonment. He did not object, nor did he ask any questions, when Judge Mosely stated prior to sentencing that Petitioner was facing up to seventy years.

The evidence demonstrates that Petitioner's focus was on the residential drug treatment program. The evidence does not suggest that Petitioner would have accepted a plea offer at or above minimum guidelines, nor does it demonstrate that the state would have offered a plea agreement above minimum guidelines. This Court cannot conclude that Petitioner would have accepted any plea offers because the evidence does not suggest that the state would have offered him one that he would have accepted. Accordingly, even if Ms. Sapp's performance in the context of plea offers was deficient—which it was not—Petitioner cannot demonstrate that he suffered any prejudice.

Petitioner has not shown that Ms. Sapp rendered deficient performance by advising Petitioner to reject an 80-month plea offer, nor

has he demonstrated that he was prejudiced by the alleged deficiency. Petitioner is, therefore, not entitled to habeas relief on ground three.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the

Petition for a writ of habeas corpus, ECF No. 1, should be **DENIED**, and

that a certificate of appealability should be **DENIED**.

**DONE AND ORDERED** this 5th day of October, 2016.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**